# IN THE COURT OF APPEALS OF IOWA

No. 18-1981
Filed February 20, 2019

**IN THE INTEREST OF Z.P., R.M., J.M., and I.M.,**
**Minor Children,**

**R.M., Father,**
  Appellant,

**T.P., Mother,**
  Appellant.
_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A mother and a father separately appeal from the termination of their parental rights to four children. **AFFIRMED ON BOTH APPEALS.**

Randall L. Jackson, Des Moines, for appellant father.

Yvonne C. Naanep, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

A mother and a father separately appeal from the termination of their parental rights to four children: Z.P., born March 2013; R.M., born May 2014; J.M., born April 2015; and I.M. born March 2016. The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(b), (e), and (g) (2018). The mother asserts termination of the father's rights was improper and argues termination of both parents' rights is not in the children's best interests. With respect to the father, the court found termination was proper under section 232.116(1)(g). The father contends grounds for termination do not exist, he should be granted a six-month extension, and his close bond with the children should prevent the termination of his parental rights. We affirm on both appeals.

**I. Background Facts and Proceedings.**

The children came to the attention of the department of human services (DHS) in April 2015[1] because J.M. was born prematurely and tested positive for THC at birth.[2] At the time of J.M.'s birth, the family was homeless, neither parent was working, and the paternal grandmother was assisting with transportation. Z.P.'s twin, X.P., was residing at Child Serve due to his medically-fragile condition and the parents' inability to care for him. DHS offered the family services.

On July 21, 2015, a child-in-need-of-assistance (CINA) adjudication and dispositional order was entered concerning Z.P., R.M., and J.M. In a July 10, 2015 report to the juvenile court, DHS social worker, Pam Battle, noted both parents had substance-abuse evaluations; the mother was found to have a severe cannabis

---

[1] We note an earlier referral was made to DHS in 2014, which we discern relates to Z.P.'s twin, X.P.

[2] Tetrahydrocannabinol (THC) is the main active ingredient of cannabis.

use disorder and the father a mild cannabis disorder. Both had tested positive for THC. It was recommended that both undergo treatment. At the time of the report, the family had found housing, employment, and transportation. The children had been admitted to a daycare. A family safety, risk, and permanency (FSRP) worker was visiting the family twice per week. The juvenile court found the children were CINA and ordered the children remain in the parents' care and services continue.

X.P. had also been adjudicated CINA. An August 18, 2015 FSRP service plan noted there was no bond between X.P. and the parents. The service plan also noted the parents needed to address their substance-abuse issues, engage in mental-health therapy, and "shall not make up excuses about following DHS recommendation[s] and what the court has ordered of them."

On August 31, the State sought to remove the three children from the parents' custody. The motion to modify placement asserted: "The parents have not complied with substance abuse treatment, both parents continue to test positive for THC while being the sole caretakers of the children, the most recent positives being 8/18/2015 and 8/20/2015, and the mother has not informed the DHS of the status of her mental health evaluation."

On September 2, the court ordered temporary custody of the children be placed with the paternal grandmother, under DHS supervision.

Social Worker Battle's September 28, 2015 report to the court noted that both parents continued to test positive for THC. Both parents had completed a substance-abuse evaluation, but neither had followed through with recommended treatment. The father was unemployed. The parents were in temporary housing. DHS had provided them with an application for subsidized housing. The

grandmother and the children were living in temporary housing (an extended-stay motel) awaiting a new apartment.

On October 20, the juvenile court issued a CINA review ruling in which it expressed concern for the current relative placement. The court noted that if more suitable housing was not found quickly, family foster care "may need to be sought." The parents were informed they needed to cooperate with substance-abuse testing and treatment. On October 28, the juvenile court placed the children in family foster care due to the "instability of their current placement."

On November 22, 2015, the juvenile court terminated the parents' parental rights to X.P., to which the parents consented. The termination order states in part:

> The undersigned became aware of [X.P.] in November 2014 upon the filing of a child welfare petition. He was adjudicated in need of assistance, out of home disposition entered, and reunification is deemed not advisable by medical personnel and really not possible given the record and the parents' lack of minimal adequacy for this particular child. The parents have not cooperated with services to be able to meet this unique child's unique and special medical needs.

On December 17, 2015, a CINA review hearing concerning Z.P., R.M., and J.M. was held. The mother and grandmother had obtained housing together—a four-bedroom home. The mother was making some progress in her substance-abuse treatment. The father, however, went to jail on October 28 for a probation violation and would not be released until January 25, 2016.

On February 19, 2016, a family team meeting was held. The mother and father reported they were clean—the mother since December 14, and the father since October 28. The father was informed that until he obtained a substance-abuse evaluation, he could not progress to semi-supervised visits.

The March CINA review hearing was continued. The mother gave birth to the couple's fifth child, I.M., in March 2016. The child's umbilical cord blood tested positive for THC. The mother acknowledged relapsing and two subsequent urinalysis (UA) screens were positive for THC but at declining levels. The father progressed to unsupervised visits and the parents began having overnight visits with the children on May 27, 2016.

On June 24, 2016, the juvenile court ordered the children returned to the parents effective July 11. Unfortunately, upon the children's return, the mother did not cooperate with services or treatment and did not provide drug screens when requested.

On September 3, the father (under an assumed surname) was jailed and then bailed out on charges of possession of an illegal substance and carrying weapons. The children's guardian ad litem (GAL) moved to have the children removed from the parents' custody.

On September 7, the juvenile court ordered:

The children shall not live with or be in the custody of father at this time. The court leaves it to [DHS]'s discretion whether a relative placement is possible and viable and whether it is a relative placement where the mother can or should reside with the children and still have their safety needs so met.

After the mother tested positive for THC on September 9, she voluntarily placed I.M. with a family friend. The older three children were placed in foster care.

An October 2016 progress report submitted by the social worker noted the father had provided a negative drug screen. It also noted the parents continued to be slow to engage in services but were caring and emotionally connected with their children.

On October 17, the GAL filed a motion to waive further reasonable efforts, asserting:

> THAT these children have been the subject of a CINA petition since April 15, 2015. The family had services for approximately a year prior to that with these children's older sibling, [X.P.], to whom the parent's parental right have been terminated."
>
> THAT these children were adjudicated by virtue of the parent's drug use and failure to utilize the services offered to them in [X.P.]'s case.
>
> THAT despite the offer and receipt of services for over two years, the mother is still using drugs, has not successfully addressed her mental health issues and the father continues to incur criminal charges.
>
> THAT the continued offer or receipt of services will not remedy the circumstances that brought these children before the court in a reasonable period of time.
>
> THAT these children need and deserve permanency.

A review hearing was held on October 24 and, on December 23, 2016, the juvenile court "determine[d] services offered by DHS need to continue on a trajectory and in a way geared toward reunification and actually working toward our goal of keeping this family together." The court noted a CINA adjudication and dispositional hearing concerning I.M. was to be scheduled for February 2017 and the court would then consider the GAL's request to waive reasonable efforts and for permanency.

On February 3, 2017, the juvenile court found I.M. to be CINA. The child was to remain in the care of the family friend.

Also on February 3, the court ordered the three oldest children returned to the parents on April 14, "so long as the below noted matters are achieved in spirit and in large measure meaningfully accomplished, helping the parents to be minimally adequate caretakers for this very important sibling group of three." The court required the mother's participation in substance-abuse and mental-health

therapy, drug screens, and medication management. The father was to provide three drug screens.[3] The court ordered a review hearing be set in April and a final permanency hearing be set in June 2017.

The April 2017 review hearing did not result in the children's return to the parents due to "uncertainty re[garding] mother's ability to maintain her mental health and well-being and whether she is engaged in services at a sufficient level." But, on June 13, the court returned the children to the mother and father's custody and ordered the mother to continue her substance-abuse and mental-health treatment.

A permanency review hearing was held on November 28, 2017. At that time, the mother was in jail. The court stated the mother had relapsed and "left the father to care for the children for a period of weeks." The court ruled the children would remain CINA and in the father's care. The court stated:

> The child[ren] shall continue in placement with father with services and support. Father was ordered to provide drug screen and court understands he complied. Prior to November 2017, Father had not attempted or really contemplated doing this without the children's mother. Given the amount of time supportive services have been offered, the Father very much is advised and knows he needs to consider whether he is going to be able to be the custodial parent for these children in the short and long term.

On January 10, 2018, the court continued the children's placement with the father and stated the permanency goal was to "support the father as custodial parent." The court ordered that the "father should be provided with supports related to housing, transportation, and food assistance."

---

[3] He had failed to show for drug screens from October 2016 to January 2017.

On March 6, 2018, the GAL filed a motion to modify the children's placement, asserting she had inquired about the children in January after their social worker went on a medical leave. The GAL reported:

> When the supervisor . . . investigated she found that FSRP had not seen the children since January and that the father . . . had placed the youngest child [I.M.] out of his home with the previous custodian and had left his own house and moved in with [his mother] from whom the children had been previously removed. The DHS supervisor also reported that another worker, Lacy Combs, had recently moved children from that home due to lack of supervision in the home and sexual behavior between those children. The father had not reported any of this to DHS or FSRP, demonstrating the choices he will make with a brief period without supervision.
> DHS immediately sought a hotel for the father and the children and the father and the [three] older children are in that hotel, [I.M.] remains with her previous custodian.

A hearing on the GAL's motion was held on March 19. The court expressed concern about the care the children were receiving and noted their placement with the father "seems tentative at best." Nonetheless, because the children were in daycare and the father could stay at the hotel for the week, the court continued the children in his care. The court ruled:

> The children [Z.P., R.M., and J.M.] shall continue in placement with father with services and support. He needs to only have children around safe persons, and may only stay with people approved by DHS vetting. If [the] father does not have a plan put together for safe and at least somewhat stable housing by Thursday March 22 then children will be in DHS custody for placement commensurate with their needs that day.

On March 23, the three children were removed from the father's care and placed in foster care. The father refused to comply with DHS requests that he wear a drug-screen sweat patch in April and May.

On May 22, the juvenile court denied the father's request to continue the review hearing scheduled on that date. One of the exhibits entered at the review

hearing was a report by the court appointed special advocate wherein she reported she made an unannounced visit at the motel where the father was staying on March 18. She discovered that the father had been allowing the mother access to the children even though she admitted to relapsing on drugs. The father left the motel with the children on March 19 and did not report their whereabouts to DHS. The court noted the father's apparent ongoing substance abuse[4] and his instability regarding housing and care of the children. The court ruled the children's March 23 removal from the father was pursuant to its previous review order and rationale and that the children's stability must now be the emphasis of services.

A petition to terminate parental rights was filed on May 30, and a termination hearing was held on September 18. The father had been arrested on July 25 as he was driving without a license and was found in possession of marijuana, Ecstasy, and Xanax. The father was released from jail on July 31 and was awaiting disposition of the resulting criminal charges. After his July arrest, the father reported to his FSRP worker he had obtained a substance-abuse evaluation and begun treatment three times per week. The social worker's September 10 report to the court noted the father had not completed a substance-abuse evaluation or engaged in treatment (from which he was discharged unsuccessfully) since 2016. The father testified he had housing lined up and he would be able to provide a home for the children in the near future. The mother had been convicted of

---

[4] The father was in the vehicle when the mother was arrested on March 29. The mother had marijuana and Xanax on her person. In a recorded phone call between the father and the mother at the Polk County Jail, the father said he had been getting high and taking non-prescribed Xanax.

possession of a controlled substance and first-degree theft charges and was serving a ten-year prison term.

The juvenile court terminated both parents' parental rights. The termination order reads, in part:

> [T]he court does not find credible [the father's] assertions about 'how close' he is to being able to have the children back in his custody. [He] refused to comply with drug screening requests of DHS in August 2018. [He] by his own admission was struggling with his own well being and mental health at least at some level, describing himself as "broken down," at the time of the hearing last month. He is reportedly working and attending his visits with his children consistently. But he was not in a place where he could be a minimally competent and minimally trusted and safe custodian for the children. And it didn't appear, at all, that he was going to be able to rise up to the occasion in any type of timely fashion.
>    The child welfare matters have been open in excess of three years, approximately forty months. And a majority of that time, the children have not been in the custody of a parent. And the children have not been in the custody of a parent for more than the last six months.

Both parents appeal.

## II. Scope and Standard of Review.

We review termination-of-parental-rights proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual findings of the juvenile court but are not bound by them. *Id.*

## III. Discussion.

The legal framework governing chapter 232 proceedings is well-established. The State must prove by clear and convincing evidence one or more statutory grounds authorizing the termination of a parent's rights and must prove termination of the parent's rights is in the best interest of the child. *See* Iowa Code § 232.116(1), (2); *In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010). Evidence is

clear and convincing when "there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

Even when the State proves its case, the juvenile court has the discretion to preserve the parent-child relationship when the parent proves by clear and convincing evidence a statutory factor allowing preservation of the parent-child relationship. *See* Iowa Code § 232.116(3) (setting forth permissive factors to avoid the termination of parental rights); *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (stating it is the parent's burden to prove an exception to termination).

*A. Mother's appeal.*

The mother makes no challenge to the grounds for termination of her own parental rights. Rather, she argues the court erred in terminating the father's parental rights. She has no standing to assert the father's rights. *See In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (stating one parent cannot assert facts or legal positions pertaining to the other parent, as the court makes a separate adjudication as to each parent). We affirm the termination of the mother's parental rights.

*B. Father's appeal.*

The father asserts the court erred in concluding termination was appropriate under section 232.116(1)(g). Section 232.116(1)(g) authorizes the juvenile court to terminate a parent's rights upon clear and convincing evidence of the following:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

There is no doubt all four of these children have been adjudicated children in need of assistance. Nor is there any doubt the father's parental rights of X.P. were terminated. The father argues, however, section 232.116(1)(g) should not apply here because the parents consented to the termination of their parental rights to X.P. due to the child's special needs and their acknowledgment that they could not provide adequate care for the child. We are not persuaded.

The prior termination was pursuant to juvenile proceedings and a termination order. Moreover, over the three-year history of this case, the father has participated in visits with his children. But he has refused to provide drug screens and has not obtained a substance-abuse evaluation since 2016. The father was able, for a time, to have the children returned to him. Unfortunately, the children were removed from his care again, and he has not addressed his substance-abuse issues and has picked up additional criminal charges. In the November 2015 termination of his parental rights to X.P., the court noted the father

"ha[d] not cooperated with services"; in September 2018, the court found the father continues to "lack the ability or willingness to respond to services." Iowa Code § 232.116(1)(g)(3).

We agree with the juvenile court that extending the time further here is not warranted. We adopt the trial court's findings:

> There is clear and convincing evidence that after more than three years of services, the parents lack the ability or willingness to respond to services that would correct the situation. And there is clear and convincing evidence that an additional period of rehabilitation would not correct the situation. The child welfare record in this case is replete with opportunities and patience provided these parents to get their mental health in order and their substance abuse and illegal choices under control. This patience was often exercised over the explicit objection of the children's attorney and guardian ad litem. Given the amount of time that has passed, the opportunities provided—there just is not sufficient reason to hold out hope any longer that an additional period of rehabilitation for either parent will correct the situation.

The father asserts the close bond he has with the children (and noted in the record) should prevent termination of his parental rights. Iowa Code section 232.116(3)(c) allows the court to avoid termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We acknowledge the bond between the father and his children. But given the length of time these children have been in limbo, we do not find that bond so close as to avoid termination of his parental rights. *See D.W.*, 791 N.W.2d at 709.

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**